1

2

3

4

5

6

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11   DOUGLAS BARRON,                    )   NO. EDCV 10-00042 SS
                                        )
12                  Plaintiff,          )
                                        )
13            v.                        )   **MEMORANDUM DECISION AND ORDER**
                                        )
14   MICHAEL J. ASTRUE,                 )
     Commissioner of the Social        )
15   Security Administration,          )
                                        )
16                  Defendant.          )
     _____)
17

18                          **I.**

19                     **INTRODUCTION**

20

21        Douglas Barron ("Plaintiff") brings this action seeking to overturn

22   the decision of the Commissioner of the Social Security Administration

23   (hereinafter the "Commissioner" or the "Agency") denying his application

24   for Disability Insurance Benefits ("DIB") and Supplemental Security

25   Income ("SSI").  The parties consented, pursuant to 28 U.S.C. § 636, to

26   the jurisdiction of the undersigned United States Magistrate Judge.  For

27   the reasons stated below, the decision of the Commissioner is AFFIRMED.

28

                             **II.**

**PROCEDURAL HISTORY**

Plaintiff filed an application for DIB and SSI on July 17, 2007. (Administrative Record ("AR") at 12). He alleged a disability onset date of June 17, 2003 due to lumbar sadiculopathy. (AR 60). The Agency initially denied Plaintiff's claim for DIB and SSI on September 3, 2007. (AR 28). This denial was upheld upon reconsideration. (AR 34). On February 27, 2009, Administrative Law Judge ("ALJ") Jesse Pease conducted a hearing to review Plaintiff's claim. (AR 203). The ALJ denied benefits on August 11, 2009. (AR 21). Plaintiff sought review of the ALJ's decision before the Appeals Council, which denied his request on December 2, 2009. (AR 4). Therefore, the ALJ's decision became the final decision of the Commissioner. (Id.). Plaintiff commenced the instant action on January 8, 2010.

**III.**

**FACTUAL BACKGROUND**

Plaintiff was born on March 11, 1960. (AR 55). He received a GED in 1980 and had no formal or vocational job training. (AR 65). He worked as a warehouse worker from January 1985 until June 17, 2003. (AR 61).

**A.   Plaintiff's Medical History**

Plaintiff's alleged injury began in 2001 while working in a warehouse. (See AR 60, 208). Plaintiff alleged "constant pain and discomfort in [his] lower back." (AR 67). As the alleged injury

2

developed, Plaintiff "missed time from work." (AR 60). In September of 2003, Plaintiff sought medical treatment from Dr. Morris Platt. (AR 117-18). In his report, Dr. Platt indicated Plaintiff received medical treatment from Dr. John Prekezes beginning in February of 2003. (AR 118). Dr. Prekezes diagnosed Plaintiff with disc prolapse and arthritis and placed Plaintiff on temporary total disability. (AR 91, 118). Dr. Prekezes treated Plaintiff with physical therapy and Darvocet. (AR 91).

Dr. Platt ordered an EMG examination of Plaintiff which yielded normal results. (AR 119). Dr. Platt noted that Plaintiff continued with physical therapy and experienced positive results. (Id.). During this time, Dr. Platt referred Plaintiff to Dr. Dikran Torian, a pain management specialist. (AR 114). Dr. Torian diagnosed Plaintiff with degenerative disc disease, lumbar disk bulges, and lumbar radiculopathy. (Id.). Dr. Platt reported that Dr. Torian treated Plaintiff with two separate epidural steroid injections. (AR 120). Despite some temporary relief, Plaintiff reported persistent pain following the injections. (AR 100, 120). Dr. Platt then referred Plaintiff to Dr. Lokesh Tantuwaya, a neurosurgeon, who found that Plaintiff did not require surgery. (AR 120). Ultimately, Dr. Platt found that Plaintiff had a disability which precluded heavy work. (AR 122). Specifically, Dr. Platt found Plaintiff had lost fifty percent of his pre-injury capacity to perform the work required of a warehouse manager. (Id.). As a result, Plaintiff qualified for workers' compensation benefits. (See AR 146).

In December of 2004, Plaintiff underwent an "Agreed Medical Evaluation." (AR 158). Dr. V. Parabhu Dhalla performed the evaluation

and confirmed Dr. Platt's opinion that Plaintiff could not perform tasks required by his warehouse position. (See AR 163). Plaintiff relied on Dr. Dhalla and Dr. Platt's reports in his initial application and subsequent requests for SSI and DBI benefits. (AR 28, 33, 38).

In September of 2008, Plaintiff sought medical treatment from Dr. Robert Robbins. (AR 191). Dr. Robbins diagnosed Plaintiff with a back injury and depression. He prescribed Welbutrin and Paxil. (Id.). At Plaintiff's first appointment, Dr. Robbins assessed Plaintiff's physical condition. (AR 183-184). Dr. Robbins found that Plaintiff was unable to stand, walk, or sit for more than two hours in an eight-hour workday. (AR 183). Dr. Robbins found that Plaintiff had no restrictions concerning his ability to use his hands or feet for repetitive motions. (Id.). Further, Dr. Robbins restricted Plaintiff's ability to lift more than ten pounds, as well as climb, stoop, kneel, crouch, and crawl. (AR 184). However, Dr. Robbins also found Plaintiff was capable of frequent reaching from waist to chest, chest to shoulders and above the shoulders. (Id.). Dr. Robbins found that Plaintiff's treatment or medications would not interfere with his ability to work. (Id.).

**B.   Consultative Examinations**

On August 24, 2007, Dr. Zaven Bilezikjian, an orthopaedic specialist, examined Plaintiff. (AR 171). Dr. Bilezikjian found Plaintiff possessed medium exertional capabilities. (See AR 171). Specifically, Dr. Bilezikjian found Plaintiff able to walk, stand, sit, climb ladders, kneel and stoop frequently and without restriction. (Id.). Dr. Bilezikjian reported Plaintiff did not "appear to be in

4

acute or chronic distress" and observed Plaintiff "mov[ing] around the exam room with a fair amount of ease." (AR 170). Further, Dr. Bilezikjian reported Plaintiff was able to rise onto his toes and heels without difficulty. (Id.). Also, Dr. Bilezikjian reported Plaintiff had a normal range of motion that lacked evidence of a discernable limitation on Plaintiff's flexibility. (Id.).

Dr. Robin Campbell performed Plaintiff's complete psychological evaluation on April 16, 2009. (AR 192). Dr. Campbell reported that though Plaintiff appeared sad and depressed at times, he had a pleasant manner and good hygiene. (AR 194). Dr. Campbell reported Plaintiff took Welbutrin, Abilify, and Peroxetine to treat his depression and admitted improvement with the medication. (AR 193). Dr. Campbell noted Plaintiff had never been psychiatrically hospitalized, had never been in mental health treatment, and did not see a psychiatrist or therapist. (Id.).

Dr. Campbell found Plaintiff had linear thought processes, was alert and oriented to time, and had concentration that was "adequate for conversation and time-limited assessment tasks." (AR 194-95). Further, Dr. Campbell found Plaintiff did not suffer from hallucinations, delusions, obsessions, or compulsions nor did Plaintiff show signs of paranoia or memory impairment. (AR 195). Dr. Campbell reported Plaintiff's judgment and insight were adequate and he "did not present with obvious cognitive delays." (Id.). Dr. Campbell stated, "[Plaintiff] is able to do household chores, run errands, shop, drive, cook, and dress and bathe himself." (AR 194). Dr. Campbell also stated that Plaintiff "gets along very well with those people he comes into

5

contact with daily." (Id.).  Dr. Campbell reported Plaintiff possessed the ability to "care for the horses and dogs" and "pay his own bills," as well as walk his daughter to and from the bus stop.  (Id.).  Notably, Dr. Campbell stated Plaintiff was able to "get about without physical assistance."   (Id.).   In concluding his summary of Plaintiff's activities, Dr. Campbell wrote: "In the morning, he gets up and feeds the horses.  He will take his daughter to the bus stop.  In the afternoon, he will take a nap and pick up his daughter.  In the evening, he will feed the horses and doges and watch TV."  (Id.).

Based on these reports, Dr. Campbell "rule[d] out major depressive disorder" and diagnosed Plaintiff with bereavement. (AR 196). Specifically, Dr. Campbell stated Plaintiff's abilities to "understand, remember, and carry out complex instructions," to "make judgments on complex work decisions," and to "respond appropriately to usual work situations and changes in a routine setting" were moderately impaired. (Id.).  Dr. Campbell further stated Plaintiff's ability to "interact appropriately with the public, supervisors, and coworkers" was mildly impaired.  (Id.).  However, Dr. Campbell found Plaintiff's ability to "make judgments on simple, work-related decisions" was unimpaired. (Id).   Further, Dr. Campbell found Plaintiff had the ability to understand, remember and carry out short, simple instructions.  (Id.).

C.   **Plaintiff's Subjective Complaints**

In his "Disability Report," Plaintiff claimed he suffered from lumbar sadiculopathy that precluded lifting, bending, driving, or performing his job as a warehouse worker. (AR 60).  Plaintiff stated

he stopped working on June 17, 2003 because his employer would only allow him to work at full capacity even though his doctor restricted this ability. (See AR 60). Plaintiff reported his work duties included lifting and carrying supplies that frequently weighed fifty pounds and occasionally weighed one hundred pounds. (See AR 61).

On August 15, 2007, Plaintiff completed an "Exertional Daily Activities Questionnaire." (AR 67, 69). In the questionnaire, Plaintiff claimed he suffered constant lower back pain that some days it was "difficult for him to get out of bed." (AR 67). Plaintiff treated his pain with Extra Strength Tylenol. (AR 69). Plaintiff admitted he could walk several hundred yards to check his mail or go to his doctors' appointments. (AR 67). Plaintiff further admitted that, though he generally avoided stairs, he could climb the three stairs at his home. (AR 68). Additionally, Plaintiff stated that he shopped for groceries if assisted by his fourteen-year-old daughter and that he carried groceries and trash every other day. (Id.). Plaintiff does minor work on his car and in his yard even though overextending himself in these activities increased his pain. (Id.). In addition to his back pain, Plaintiff reported feelings of depression allegedly caused by his wife's illness and his inability to perform his daily chores without tiring. (See AR 67, 69). Plaintiff stated that he slept approximately eight to ten hours at night and one to two hours during the day. (AR 69). Plaintiff stated on "bad days" his chores went undone. (Id.).

At the February 27, 2009 hearing, Plaintiff again claimed he suffered from lower back pain and depression as well as neck pain and numb extremities. (See AR 206-07). Plaintiff stated that his back pain

had remained constant since it first developed, but the severity of his mental condition was cyclical. (See AR 209, 212). Plaintiff speculated it was his physical rather than his mental condition that kept him from working. (AR 207). Plaintiff again claimed he was unable to work because his employer would not permit him to return to his warehouse job unless he was capable of performing his full duties. (AR 208). Plaintiff claimed the recent death of his wife had increased his depression. (AR 206). Plaintiff speculated his depression would cause difficulty working with other people in close proximity and completing tasks in a timely manner. (See AR 209-10). Plaintiff stated he sometimes neglected his personal hygiene and medical regimen. (AR 217-18). However, Plaintiff cares for his pets, does minor chores, and takes his daughter to the bus stop. (AR 210-11).

**D.   Vocational Expert's Testimony**

At the February 27, 2009 hearing, Gregory Jones, a vocational expert ("VE"), testified as to Plaintiff's ability to work. (AR 218). Answering a hypothetical the ALJ posed, Jones stated an individual with Plaintiff's education, skills, work history, and residual functional capacity ("RFC"),[1] could not perform the duties of a warehouse worker. (AR 219). However, Jones stated that such an individual would be able to work as a housekeeper, cafeteria attendant, or bench assembler as defined in the Dictionary of Occupational Title. (AR 220). Further,

---

[1]   Residual functional capacity is "the most [one] can still do despite [one's] limitations" and represents an assessment "based on all the relevant evidence in [one's] case record." 20 C.F.R. §§ 404.1545(a), 416.945(a).

Jones stated that such jobs were available in the national economy as well as Plaintiff's regional economy.  (Id.).

## IV.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[2] and that is expected to result in death or to last for a continuous period of at least twelve months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows:

> (1)  Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled. If not, proceed to step two.

---

[2]  Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit.  20 C.F.R. §§ 404.1510, 416.910.

(2)   Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)   Is the claimant capable of performing her past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)   Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1); Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54.  If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's RFC, age, education, and work experience. Tackett, 180 F.3d

10

at 1098, 1100; <u>Reddick</u>, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  The Commissioner may do so by the testimony of a VE or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2001).   When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a VE.  <u>Moore v. Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000).

## V.

### THE ALJ'S DECISION

On August 11, 2009, the ALJ issued a decision denying Plaintiff's application for SSI and DIB. (AR 12, 21).  The ALJ employed the five-step sequential evaluation process, (See AR 13), and concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 21).  At the first step, the ALJ observed Plaintiff had not engaged in substantial gainful activity since the alleged onset of Plaintiff's injury. (AR 14).  Next, the ALJ found Plaintiff suffered from multilevel degenerative disc disease, lumbar spine sprain/strain, and depressive disorder secondary to bereavement. (<u>Id.</u>).  Further, the ALJ found these impairments were severe because they affected Plaintiff more than minimally. (<u>Id.</u>).  At step three, the ALJ found the severe impairments at step two did not meet or medically equal a listed impairment. (AR 15).

At step four, the ALJ found Plaintiff could no longer perform his past work and possessed the RFC to perform less than a full range of

1  light work as defined in 20 CFR 404.1567(b) and 416.967(b).  (AR 15,
2  19).  Specifically, the ALJ found Plaintiff could stand, sit, and walk
3  for six hours in an eight-hour work day, perform occasional postural
4  activities, and carry and lift twenty pounds occasionally and ten pounds
5  frequently.  (AR 15).  Additionally, the ALJ found Plaintiff could do
6  non-public tasks that were limited to superficial contact with others.
7  (AR 16).  However, the ALJ held Plaintiff could not climb ladders,
8  ropes, or scaffolds.  (AR 15).  Notably, the ALJ found that Plaintiff
9  could do "non-public, complex tasks, limited to superficial contact with
10 others" in his decision.[3]  (AR 16).  However, when questioning the VE
11 during the hearing about Plaintiff's ability to work, the ALJ qualified
12 a hypothetical by limiting Plaintiff to performing "no complex tasks."
13 (See AR 219), and the Court finds that the jobs the ALJ ultimately found
14 Plaintiff capable of were jobs involving "non-complex tasks".  The ALJ
15 used the VE's answer to his hypothetical, using non-complex tasks, in
16 the ALJ's evaluation of Plaintiff's RFC.  (See AR 16, 20).  Plaintiff
17 admits that the ALJ's error in his written decision, stating Plaintiff
18 could perform "complex tasks", was harmless.  (See Pl. Compl. Br. at 3).
19
20    The ALJ followed an additional two-step process to consider
21 Plaintiff's alleged symptoms pursuant to step four.  (AR 16).  First,
22 the ALJ considered all available medical testimony and determined
23 Plaintiff's impairments could reasonably be expected to cause his
24 alleged symptoms.  (Id.).  However, pursuant to the second step, the ALJ
25
26    [3]  The Court finds that this was likely a inadvertent error on the
27 part of the ALJ and that the ALJ intended to find that Plaintiff could
   perform "non-complex tasks," consistent with the ALJ's hypothetical and
28 the ALJ's ultimate findings regarding the jobs Plaintiff could perform.

held Plaintiff's testimony regarding the intensity and limiting effects of his impairments was inconsistent with his RFC and medical findings. (AR 16-17). Specifically, the ALJ stated Plaintiff's, "self-reported physical functional ability is inconsistent with his claim of physical disability." (AR 16). The ALJ relied on benign medical evidence and a minimal treatment regimen to support his position. (AR 17). Specifically, the ALJ cited MRI results showing "no significant impingement," normal EMG and nerve conduction study results, and Plaintiff's ability to move around with ease. (Id.). Also, the ALJ noted Plaintiff's pain rating suggested Plaintiff's "pain was manageable and not severe." (Id.). However, the ALJ gave "great weight" to Dr. Campbell's opinion that Plaintiff had moderate difficulties regarding concentration, persistence, and pace and mild difficulties in social functioning. (AR 19). As a result, and taking into consideration the psychological effects caused by Plaintiff's wife's passing, the ALJ found Plaintiff's RFC to be less than the RFC found by the consultative orthopedist, Dr. Bilezikjian. (See id.).

Finally, at step five, the ALJ concluded that, based on Plaintiff's RFC and the VE's testimony, Plaintiff could work as a housekeeper, cafeteria attendant, or bench assembler. (AR 20). Accordingly, the ALJ found that Plaintiff was not disabled at any time through the date of the decision. (AR 20).

**VI.**

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole.  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720.  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." (Id.).  To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

**VII.**

**DISCUSSION**

Plaintiff contends the ALJ erred for two reasons.  First, Plaintiff argues the ALJ failed to include a component of Dr. Campbell's opinion in his decision. (Plaintiff's Complaint Brief ("Pl. Compl. Br.") at 3-

14

4).   Second, Plaintiff argues the ALJ erred by finding Plaintiff's testimony was not credible.   (Id. at 6).   For the reasons discussed below, the Court disagrees with Plaintiff's contentions.

**A.   No Remand Is Required For Further Consideration Of The Consultative Examiner's Opinion As The ALJ's Residual Functional Capacity Determination Is Supported By Substantial Evidence**

Plaintiff argues the ALJ rejected portions of Dr. Campbell's opinion regarding Plaintiff's mental limitations when assessing Plaintiff's RFC.   (Pl. Compl. Br. at 3).   Specifically, Plaintiff contends the ALJ did not consider Dr. Campbell's opinion that Plaintiff suffered moderate impairments in his "ability to respond appropriately to usual work situations and changes in a routine setting."   (Id. at 3-4).   Plaintiff maintains the rejected limitations would further limit Plaintiff's ability to work and must therefore be factored into the ALJ's assessment of Plaintiff's RFC.   (Plaintiff's Reply Brief ("Pl. Reply Br.") at 2).   The Court disagrees.

Consultative physicians are nontreating sources.   Implementing regulations define a "nontreating source" to mean "a physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]."   20 C.F.R. § 416.902.   This term "includes an acceptable medical source who is a consultative examiner for [the Agency] when the consultative examiner is not [the claimant's] treating source."   Id.   The uncontradicted opinion of a consultative examiner can only be rejected for "clear and convincing" reasons.

1   Lester v. Chater, 81 F.3d 831, 830 (9th Cir., as amended April 9, 1996).
2   Further, the opinion of the consultative examiner, even if contradicted
3   by another doctor, can only be rejected for specific and legitimate
4   reasons that are supported by substantial evidence in the record.
5   Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

7       Dr. Campbell examined Plaintiff on April 16, 2009 and diagnosed him
8   with bereavement "rul[ing] out major depressive disorder." (AR 196).
9   Dr. Campbell found Plaintiff had moderate impairments regarding his
10  ability to "understand, remember, and carry out complex instructions,"
11  "to make judgements on complex work decisions," and "to respond
12  appropriately to usual work situations and changes in a routine
13  setting." (AR 196). Dr. Campbell further found Plaintiff had mild
14  impairments regarding his "ability to interact appropriately with the
15  public, supervisors, and coworkers." (Id.). Dr. Campbell stated
16  Plaintiff was dysphoric and pessimistic but was "able to get along
17  without physical assistance," and could get along "very well with those
18  people he comes into contact with daily." (AR 194, 196). Dr. Campbell
19  reported Plaintiff was alert and well oriented, possessed adequate
20  judgement, insight, and concentration, and "did not present with obvious
21  cognitive delays," or memory impairment. (AR 194-95). Dr. Campbell
22  noted Plaintiff did not see a psychiatrist or therapist, and
23  acknowledged some improvement from the medication he took. (AR 193).

25      The ALJ gave "great weight" to Dr. Campbell's findings. (AR 19).
26  The ALJ found the results of Plaintiff's psychological examination
27  "mostly benign." (Id.). The ALJ did not expressly reference Dr.
28  Campbell's opinions regarding Plaintiff's mental impairments in his

16

decision.  (See id.).  Instead, the ALJ characterized them as "moderate difficulties with regard to concentration, persistence, and pace" and "mild difficulties in social functioning."  (Id.).   The ALJ merely restated Dr. Campbell's findings, but did not ignore them when the ALJ described Plaintiff's RFC.  Based in part on Dr. Campbell's opinions and Plaintiff's testimony, the ALJ determined Plaintiff could perform non-public, non-complex tasks[4] limited to superficial contact with others.  (See AR 16, 19, 219).

Here, Plaintiff's RFC is consistent with Dr. Campbell's opinion because the ALJ incorporated all of it into his decision rather than rejecting some of it as Plaintiff contends.  Because the ALJ adopted Dr. Campbell's opinion with "great weight," (AR 19), he was not required to provide "specific, legitimate reasons for rejecting" it.  (Pl. Compl. Br. at 3).   Dr. Campbell reported that Plaintiff had moderate impairments in his "ability to respond appropriately to usual work situations and changes in a routine setting."  (AR 196).   Plaintiff argues the ALJ rejected this specific component of Dr. Campbell's opinion when determining Plaintiff's RFC because he did not state it in his decision.  (See Pl. Compl. Br. at 3-4) ("Rather than take into account any of the functional limitations cited by Dr. Campbell, the ALJ instead merely described Dr. Campbell's opinions . . . .").  However, the ALJ explicitly stated he gave "great weight" to Dr. Campbell's opinion and characterized it in his report as "moderate difficulties

_____

    [4]  As discussed in footnote 3, above, the Court finds that the ALJ intended to use the term "non-complex" tasks when describing Plaintiff's RFC, as reflected in the ALJ's hypothetical, and inadvertently used the term "complex tasks" in his written decision.

with regard to concentration, persistence, and pace." (AR 19). The ALJ reasoned Plaintiff "could perform no complex tasks," (See AR 219), and thus restricted Plaintiff to jobs that were "non-public" and "limited to superficial contact with others." (AR 16). The ALJ incorporated Dr. Campbell's opinion by making these restrictions. The restrictions precluded Plaintiff from working jobs that required rapid judgement and adaptability and thus addressed Plaintiff's moderate inability to respond appropriately to usual work situations and changes. Therefore, the ALJ fully incorporated Dr. Campbell's opinion into Plaintiff's RFC.

Furthermore, substantial evidence supports the ALJ's RFC. Dr. Bilezikjian reported Plaintiff possessed medium exertional capabilities, (See AR 171), based on Plaintiff's normal range of motion and ability to move with ease. (AR 170). Dr. Bilezikjian's opinion is consistent with Plaintiff's own reported ability to care for his pets, grocery shop, and do minor household chores. (AR 67-68, 211). However, Plaintiff testified the effects of his wife's death exacerbated his depression and caused limitations on his mental capacities. (See AR 206, 209, 217). Based on these statements, the ALJ lowered Plaintiff's RFC from medium to light work and added further restrictions to address Plaintiff's mental impairments. (See AR 19). The ALJ noted that his RFC assessment was lower than any of Plaintiff's doctors' assessments, including those who placed Plaintiff on temporary total disability for workers' compensation purposes. (Id.). Any benefit derived from explicitly addressing Dr. Campbell's allegedly rejected opinion was therefore already incorporated into the ALJ's RFC. Thus, it is unlikely that the ALJ would have lowered the RFC any further had he listed Dr. Campbell's statements verbatim in his decision. To the extent the ALJ

did not address Dr. Campbell's opinion verbatim, any failure to do so was harmless error.  <u>See</u> <u>Carmickle v. Comm'r</u>, 533 F.3d 1155, 1162 (9th Cir. 2008) ("So long as there remains 'substantial evidence supporting the ALJ's conclusions' and the error 'does not negate the validity of the ALJ's ultimate conclusion,' such is deemed harmless and does not warrant reversal)(quoting <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1197 (9th Cir. 2004)); <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless.").

Thus, the Court concludes the ALJ properly incorporated Dr. Campbell's opinion into his assessment of Plaintiff's RFC.  Further, any error the ALJ made by not addressing Dr. Campbell's opinion verbatim is harmless.  Therefore, remand is unwarranted and the Commissioner's decision is affirmed.

**B.**    **The ALJ Provided Clear And Convincing Reasons For Rejecting Plaintiff's Subjective Testimony**

Plaintiff argues the ALJ improperly rejected Plaintiff's testimony. (<u>See</u> Pl. Compl. Br. at 6).  Plaintiff maintains the ALJ failed to provide clear and convincing reasons for finding Plaintiff's testimony inconsistent with the medical evidence.  (<u>See</u> Pl. Reply Br. at 4). Plaintiff asserts the ALJ's findings are not supported by substantial evidence.  (<u>Id.</u>).  The Court disagrees.

Whenever an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, as it is here, the ALJ must make

1    explicit credibility findings. Rashad v. Sullivan, 903 F.2d 1229, 1231

2    (9th Cir. 1990); see Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir.

3    1990) (holding an implicit finding that claimant was not credible is

4    insufficient).  Unless there is affirmative evidence showing that the

5    claimant is malingering, the ALJ's reasons for rejecting the claimant's

6    testimony must be "clear and convincing." Lester, 81 F.3d at 834.  As

7    long as plaintiff offers evidence of a medical impairment that could

8    reasonably be expected to produce pain, the ALJ may not require the

9    degree of pain to be corroborated by objective medical evidence.

10   Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991) (en banc);

11   Smolen, 80 F.3d at 1282.

12

13       An ALJ can, however, reject a claimant's testimony regarding the

14   severity of his symptoms if the ALJ points to clear and convincing

15   reasons for doing so.  See Smolen, 80 F.3d at 1283-84.  To determine

16   whether testimony regarding the severity of symptoms is credible, the

17   ALJ may consider, among other things, the following evidence: (1)

18   ordinary techniques of credibility evaluation, such as the claimant's

19   reputation for lying, prior inconsistent statements concerning the

20   symptoms, and other testimony by the claimant that appears less than

21   candid; (2) unexplained or inadequately explained failure to seek

22   treatment or to follow a prescribed course of treatment; and (3) the

23   claimant's daily activities.  Id. at 1284.  If the ALJ's credibility

24   finding is supported by substantial evidence in the record, the Court

25   may not engage in second-guessing. Thomas v. Barnhart, 278 F.3d 947,

26   959 (9th Cir. 2002).

27

28

20

1    At the February 27, 2009 hearing, Plaintiff claimed the severity

2 of his pain had remained constant since its onset.  (AR 212).

3 Specifically, Plaintiff stated he suffered from "stiffness in [his]

4 neck," "lower, middle back pain," a "numb or tingly" right leg, and

5 "problems with [his] right arm and shoulder." (Id.).  Plaintiff stated

6 he was "pretty much taking it easy and not doing a lot of physical

7 work." (AR 212).  Plaintiff also claimed he suffered from depression

8 brought on in part by his wife's death.  (See AR 206).  Plaintiff

9 suggested his depression would make it difficult for him to work with

10 other people and complete tasks in a timely manner.  (See AR 209-10).

11 However, Plaintiff admitted he could take his daughter "to and from the

12 bus stop," (Id.), "feed [his] dogs and cats," and "try to do a little

13 around the house."  (AR 211).

14

15    The ALJ provided clear and convincing reasons for rejecting

16 Plaintiff's subjective testimony regarding the severity of his pain.

17 The ALJ compared Plaintiff's testimony, medical history, and prior

18 statements.  The ALJ then based his decision on three factors: (1)

19 Plaintiff's daily activities; (2) the benign medical evidence; and (3)

20 Plaintiff's conservative treatment regimen.

21

22    First, in regard to Plaintiff's daily activities, the ALJ stated,

23 "[Plaintiff's] self-reported physical functional ability is inconsistent

24 with his claim of physical disability."  (AR 16).  To support this

25 finding, the ALJ cited Plaintiff's admission that he could "climb

26 stairs, carry groceries, take out the trash, shop, do laundry, drive,

27 and do yard work."  (AR 16) (citing AR 68).  The ALJ also cited

28 Plaintiff's admission to Dr. Campbell that Plaintiff could "care for his

21

horses and dogs, as well as dress and bathe himself." (Id.) (citing AR 194). This Court agrees with the ALJ that Plaintiff's daily activities of caring for horses and dogs, various household chores, driving and doing yard work are inconsistent with the degree of pain described by Plaintiff.

Second, the ALJ cited benign medical evidence to support his rejection of Plaintiff's testimony. The ALJ held, "[T]he medical evidence suggests [Plaintiff's] impairment was not as severe as [Plaintiff] alleges." (AR 17). Specifically, the ALJ cited to Plaintiff's MRI results that showed "no significant impingement" and his EMG and nerve conduction study results that were normal. (Id.) (citing AR 97, 99, 140). The ALJ also reasoned that Plaintiff's pain rating suggested Plaintiff's "pain was manageable and not severe." (Id.) (citing AR 159). The ALJ noted that his treating physician found that Plaintiff could work part-time at the warehouse if his employer allowed it. (AR 17). Further, the ALJ noted that Dr. Bilezikjian observed Plaintiff "moving about the examination room with a fair amount of ease." (Id.) (citing AR 170). The Court agrees that the medical evidence is not consistent with the degree of pain asserted by Plaintiff.

Third, the ALJ cited Plaintiff's conservative treatment to support rejection of Plaintiff's testimony. The ALJ found that Plaintiff's back pain treatment was "minimal." (AR 17). Further, the ALJ noted Plaintiff took only Tylenol to relieve his pain, though he had received epidural injections in the past. (Id.). Finally, the ALJ observed that Plaintiff was not a candidate for surgical intervention. The ALJ's

conclusion that Plaintiff's treatment was "minimal" and conservative is supported by the record.   This evidence supports the rejection of Plaintiff's testimony.

Thus, the Court concludes the ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony regarding his claim of complete disability.   Therefore, the Commissioner's decision is affirmed.

## VIII.

### CONCLUSION

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[5] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: September 20, 2010.

_____/S/_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

---

[5]   This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."